# EXHIBIT A

# Confidentiality and Noncompete Agreement

Case 1:14-cv-02503-SCJ   Document 8-2   Filed 09/08/14   Page 1 of 7

7-9-2012

## CONFIDENTIALITY AND NONCOMPETE AGREEMENT

This Agreement is entered into as of **June 17**, 20**13** between **Richard Thompson** ("Employee") and **TRINITAS VENTURES LLC** and its affiliates and subsidiaries (collectively, the "Company"). In consideration of the covenants and agreements set forth later in this Agreement, Employee's employment or continued employment with the Company and the payment of wages to Employee by the Company during Employee's employment, the parties agree as follows:

1. **CONFIDENTIAL INFORMATION.**

    (a) <u>Ownership of and Obligation to not Disclose Confidential Information</u>. Employee acknowledges that all Confidential Information (as defined below) is the exclusive property of the Company. Employee shall not at any time, directly or indirectly, communicate, divulge or disclose to any person, firm, corporation, or other entity, or publish, or use for the benefit of Employee or any other person or entity other than the Company, any Confidential Information.

    (b) <u>Definition of Confidential Information</u>. Confidential Information of the Company means all confidential or proprietary information of the Company and all trade secrets of the Company, which information was communicated to or otherwise developed, learned or acquired by Employee in the course of his or her employment by the Company. The Company's Confidential Information shall include, but not be limited to, the following: (i) information about the Company's business plan; (ii) information about the Company's web site, such as its internal operation and structure, that is not obvious to a third party Internet user; (iii) information about the Company's products and services and contemplated products and services, including but not limited to design and research and development information; (iv) information about the Company's business techniques; (v) market-research information pertaining to previous, existing, or prospective developments; (vi) lists and the identities of the Company's investors, clients and suppliers and prospective investors, clients and suppliers; (vii) contract terms, pricing and pricing methods of the Company or of third party providers to the Company; (viii) the Company's methods of operation, procedures and forms; (ix) Company financial information and financial information about the Company's clients; (x) information about the ownership or owners of the Company; and (xi) any and all other documents or information which must be maintained in confidence for the continued success of the Company and its business. Any of the foregoing to the contrary notwithstanding, the term "Confidential Information" shall not include information which (i) is or becomes available generally to the public other than as a result of a disclosure by Employee in the same or similar form to that possessed by the Company, (ii) is or becomes available to Employee from a source other than the Company or its representatives in the same or similar form to that possessed by the Company, provided that such source is not, and was not, bound by a confidentiality agreement with the Company or any of its affiliates or representatives, or (iii) the Company acknowledges in writing was available to the Employee on a non-confidential basis prior to disclosure.

2. **OWNERSHIP OF TANGIBLE AND ELECTRONIC MATERIALS.** Employee acknowledges that all tangible and electronic materials (whether originals or duplicates) in

Employee's possession or control, which in any way relate or pertain to the Company's business, whether furnished to Employee by the Company or prepared, compiled or acquired by Employee through his or her employment with the Company, including but not limited to, all, data, books, records, manuals, sales literature, training materials, software, specifications, models, correspondence, documents, contracts, orders, messages, memoranda, notes, invoices and receipts and the same or similar items in an electronic medium, are and shall be the sole property of the Company.

Employee agrees that at any time upon request of the Company, and in any event promptly upon termination of employment with the Company, Employee shall transfer and deliver all such material to the Company.

3. **PROPRIETARY DEVELOPMENTS.** Employee acknowledges that all right, title and interest in and to any and all inventions, discoveries, design ideas, computer systems, computer programs, formulas, drawings, models, processes, methods, techniques, devices and data (whether or not patentable, copyrightable, or susceptible to other forms of protection) and any and all patents, copyrights, and improvements to any of the foregoing conceived (even if not yet fixed in any tangible medium of expression or reduced to practice), created or developed by Employee, alone or jointly with one or more others, during his or her employment with the Company and relating to the Company's business (the "Developments") are the property of the Company and are Confidential Information of the Company and shall be kept in confidence in accordance with Section 1 above. Without limiting the foregoing, Employee acknowledges that any copyrightable Development conceived, created or developed by Employee is a "work made for hire" within the meaning of the Copyright Act of 1976.

4. **ASSIGNMENT OF RIGHTS.** If, for any reason, any Development shall be deemed not made for hire or not to be the property of the Company, then Employee hereby assigns to the Company all of Employee's right, title and interest in and to all such Developments from and after the time of conception, creation and/or development, for the full period of available protection and all extensions and renewals thereof, if any.

5. **OWNERSHIP OF DEVELOPMENTS BY EMPLOYEE.** Notwithstanding the foregoing provisions of this Agreement, Employee understands and is hereby notified that this Agreement shall not apply to any inventions or discoveries that are conceived, created or developed by Employee entirely on Employee's own time and for which no equipment, supplies, facilities or trade secret information of the Company is or are used, unless (a) the inventions or discoveries relate to the business of the Company or to the Company's actual or demonstrably anticipated research or development, or (b) the inventions or discoveries result from any work performed by Employee for the Company.

6. **DISCLOSURE.** Employee agrees to disclose promptly to the Company all Developments and to comply with the Company's reasonable instructions and sign documents necessary and appropriate for the purpose of vesting, confirming or securing the Company's title to all Developments, and Employee agrees to do anything else reasonably necessary to enable the Company to secure a patent, to register a copyright or to otherwise protect the Company's interest in all Developments.

7. **PRIOR INVENTIONS OR DISCOVERIES.** Employee represents that Employee has identified on an attached sheet designated as Exhibit A all inventions or discoveries in which

Employee has any right, title or interest, which were made, conceived or written in whole or in part by Employee prior to Employee's employment with the Company and which could relate to the business of the Company. If Employee does not have any such invention or discovery to identify, Employee has written "none" on <u>Exhibit A</u>.

Employee acknowledges that failure to identify all prior inventions or discoveries is conclusive proof that any inventions or discoveries subsequently identified by the Employee were conceived, created or developed by Employee after being employed by Company and are subject to the provisions of this Agreement.

8. **COVENANT NOT TO COMPETE, NOT TO SOLICIT.**

(a) During Employee's employment with the Company and for one (1) year thereafter, Employee shall not without the prior written consent of the Company (which consent shall not be withheld by the Company provided that the Company determines in its discretion that such consent shall not potentially harm the Company's interests), perform services for, have an investment in, or otherwise become associated with, any person, company or entity that (i) is a partner or competitor of the Company; or (ii) engages in any business that is the same or substantially similar to the current business of the Company or the business of the Company at the time of Employee's termination in which the Employee is involved, including the financing, acquisition, development, construction, or management of student housing; located or engaged in business within ten (10) miles of the Company's operations and/or property owned, managed, under development, or for which the Company has identified an interest in acquiring or developing at that time (the "Territory").

(b) Employee agrees that during Employee's employment with the Company and for two (2) years thereafter, Employee shall not directly or indirectly, alone or by act in concert with others, recruit or solicit for employment or seek to influence to leave employment any current or future employee of the Company or its successors.

(c) Employee agrees that during Employee's employment with the Company and for two (2) years thereafter, Employee shall not solicit or otherwise contact, with a view toward competing with any business in which the Company has been engaged, any Company client or supplier, or former client or supplier with whom or with which Employee or any other Company employee had contact during Employee's employment with Company.

(d) Employee acknowledges that the Company does business throughout the Territory and that the clients and former clients of the Company are located throughout the Territory.

9. **REMEDIES.** In the event of a violation of this Agreement, Employee agrees that (i) the Company shall be entitled as a matter of right, in addition to other remedies otherwise available to it at law or in equity, to injunctive relief restraining any further violation of this Agreement by Employee, and (ii) any and all deferred compensation and/or benefits shall be forfeited. Employee acknowledges that the limitations set forth in this Agreement will not cause Employee undue hardship nor unreasonably interfere with Employee's ability to earn a livelihood.

10. **NO OBLIGATION TO EMPLOY.** Nothing in this Agreement shall confer on Employee any right to continue in the employ of, or other relationship with, the Company, or limit

in any way the right of the Company to terminate Employee's employment or other relationship at any time, with or without cause.

11. **INDEMNIFICATION.** Employee shall indemnify, release and hold harmless Company from and against any claim, loss, liability, expense, damage or injury (and all expenses, including attorneys' fees, incurred in defending any such claim or in enforcing this indemnity) suffered or sustained by reason of Employee's breach of this Agreement.

12. **MISCELLANEOUS.**

(a) This Agreement is made and entered into in the State of Indiana and shall be interpreted, enforced, and governed under the laws of the State of Indiana.

(b) With respect to any suit, action or proceeding relating to employment or this agreement, Employee irrevocably submits to the exclusive jurisdiction of the state and federal courts having jurisdiction in the City of Lafayette, County of Tippecanoe, State of Indiana.

(c) Employee agrees not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of Company, its owners, employees, directors, and officers. The Parties acknowledge and agree that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, social media, investors, potential investors, any board of directors or advisory board or directors, industry analysts, competitors, strategic partners, vendors, employees (past and present), and clients.

(d) Employee acknowledges and represents that Employee has read the foregoing Agreement, understands it, and agrees to abide by its terms. This Agreement is binding on Employee and Employee's heirs, administrators and executors and shall inure to the benefit of the Company's successors and assigns.

(e) The provisions of this Agreement shall survive termination of Employee's employment with the Company.

(f) Employee represents that Employee is not a party to any agreement that would limit Employee's ability to comply with the terms and conditions of this Agreement.

(g) The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

(h) If any provision of this Agreement or the application thereof shall be adjudged by any court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of all other applications of such provision, and of all other provisions and application hereof, shall not in any way be affected or impaired.

(i) If any one or more of the provisions of this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity, or subject, each such provision shall be construed, by limiting and reducing it, so as to be enforceable to the fullest extent compatible with applicable law then in force.

(j) No waiver by either party hereto at any time of a breach by the other party of any provision of this Agreement to be performed by such other party shall be deemed a waiver of any similar or dissimilar provisions hereof at the same or any prior or subsequent time.

[END OF TEXT]

[SIGNATURE PAGE FOR CONFIDENTIALITY AND NONCOMPETE AGREEMENT]

**IN WITNESS WHEREOF**, and intending to be legally bound, the parties have executed the foregoing Agreement as of the date first stated above.

**EMPLOYEE**

By: _[signature]_
Signature

Richard Thompson
Printed Name

6-17-13
Date


**COMPANY**

By: _[signature]_
Signature

G. M Walls
Printed Name

Manager
Title

6-17-13
Date